IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA.

CIRCUIT CIVIL

KRISTA ROSENBERG, M.D.,                              CASE NO.:

      Plaintiff,

vs.

RELIANCE STANDARD
INSURANCE COMPANY,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, KRISTA ROSENBERG, M.D., by and through undersigned counsel, hereby files this her Complaint against Defendant, RELIANCE STANDARD INSURANCE COMPANY, and says:

1.      This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00).

2.      The Plaintiff, KRISTA ROSENBERG, M.D. (hereinafter "ROSENBERG" or "Plaintiff"), is a resident of Boca Raton, Palm Beach, County, Florida and is, in all respects, *sui juris*.

3.      Defendant, RELIANCE STANDARD INSURANCE COMPANY, (hereinafter "RELIANCE" or "Defendant"), is a foreign corporation doing business in Florida and can be found in Florida.

4.      RELIANCE issued and delivered a Group Long Term Disability Policy (#LTD124706) (hereinafter as "Disability Policy" or "Policy") to Retina Vitreous Consultants, LLP d/b/a Retina Group of Florida (hereinafter "The Retina Group" or

"Group"), in the State of Florida, effective December 1, 2013. (The Disability Policy is attached hereto as **Exhibit "A.").**

5.      ROSENBERG, a former full-time Owner/Physician of The Retina Group, is an insured person under the policy.

6.      Neither the Disability Policy nor these claims are subject to the Employment Retirement Income Security Act ("ERISA") 29 U.S.C. §1001 et, seq. in that the policy was not issued as part of an employee welfare benefit plan and are thus exempt from ERISA.

7.      The purpose of the Disability Policy was to provide ROSENBERG a monthly loss of income benefit in the event that she became totally disabled, defined as:

> Totally Disabled" and "Total Disability" as defined by the Policy means that as a result of injury or sickness, during the Elimination Period and thereafter you cannot perform the substantial and material duties of your regular occupation.[1]

(See **Exhibit A, Page 2.2.)**

8.      ROSENBERG suffers from, among other things, continuing symptomatology from a collapsed lung/pneumothorax, including fatigue, shortness of breath and pain.

9.      As of November 19, 2020, ROSENBERG has been unable to perform the substantial and material duties of her regular occupation as a vitreoretinal surgeon due to her disabling condition.  ROSENBERG is clearly totally disabled under the terms of the Disability Policy.

---

[1] "Regular Occupation" means the occupation you are routinely performing when Total Disability begins. We will look at your occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

10.     On or about May 20, 2021, ROSENBERG notified Defendant that she was totally disabled.

11.     By letter dated September 30, 2021, RELIANCE denied coverage for Plaintiff's claim asserting that because Plaintiff's employer (The Retina Group) paid the Plaintiff her earnings to her pass-through Subchapter S Corporation rather than to her directly, "there are no eligible earnings upon which to base a benefit in accordance with your group's LTD (Long Term Disability) Policy definition of Covered Monthly Earnings." (RELIANCE'S September 30, 2021, denial letter is attached hereto as **Exhibit "B.").**

12.     By letter dated March 3, 2022, ROSENBERG, through counsel, appealed Defendant's improper denial of coverage. (Counsel's March 3, 2022, letter is attached hereto as **Exhibit "C."**).  The appeal letter explains that Defendant's interpretation of the definition of "Covered Monthly Earnings"[2] to deny benefits to Plaintiff merely because her income from the group practice passed through her Subchapter S Corporation is contrary to the Policy and Florida law.

13.     The letter further explains that Defendant denied coverage even though the definition of Covered Monthly Earnings includes an insureds' "basic monthly salary" and

---

[2] "Covered Monthly Earnings" means your basic monthly salary received from the Policyholder on the day just before the date of Total Disability, prior to any deductions to a 401(k) and Section 125 plan. Covered Monthly Earnings does not include commissions, overtime pay, incentive pay, or any other special compensation not received as Covered Monthly Earnings. However, "Covered Monthly Earnings" will include bonuses received from the Policyholder averaged over the lesser of: (1) the number of months worked; or (2) the 36 months; just prior to the date Total Disability began. and "Covered Monthly Earnings" means your compensation from the partnership averaged over the lesser of: (1) the number of months worked; or (2) the 36 months; in the calendar year(s) prior to the date Total Disability began, as reported on the partnership federal income tax return (Ki) as "net earnings (loss) from self-employment".

the absence of any policy provision which either excludes pass-through income to a Subchapter S Corporation or limits "basic monthly salary" to W-2 wages.

14.     Finally, the letter explains that the Policy was sold to The Retina Group by a licensed and appointed agent of RELIANCE, and that RELIANCE's agent knew at the time of application for the Policy that ROSENBERG and each of the other co-owner physicians of the group had established their own Subchapter S Corporation as a pass-through entity.

15.     Defendant did not respond to counsel's March 3, 2022, letter of appeal.

16.     Although Defendant has since agreed to amend the Policy to clarify that Plaintiff, and the Subchapter S-Corporations of the other physician owners in the Group are indeed insureds, Defendant continues to deny Plaintiff's claim for total disability benefits.

17.     ROSENBERG has exhausted all the administrative remedies under the Policy, or they have been waived or excused.

18.     ROSENBERG has complied with all conditions precedent to this action, or they have been excused or waived.

19.     ROSENBERG has been forced to retain the services of undersigned counsel in order to prosecute this action and is obligated to pay attorneys' fees on a contingent fee basis.

**COUNT I**
**DECLARATORY RELIEF**

Plaintiff, KRISTA ROSENBERG, M.D., hereby adopts, realleges and reaffirms each and every allegation contained in paragraphs 1 through 19 of this Complaint as though fully alleged herein and further alleges:

20.     This is an action for Declaratory Relief pursuant to Chapter 86 of the Florida Statutes.

21.     RELIANCE has denied coverage to ROSENBERG on the basis that ROSENBERG had no eligible earnings upon which to base a benefit as her earnings first passed through her Subchapter S Corporation.

22.     ROSENBERG contends that the policy provides coverage, notwithstanding the manner in which her earnings were paid.

23.     On the facts of this case, the Plaintiff, ROSENBERG, is in doubt as to her rights under the terms and provisions of the subject insurance policy and Florida law.

24.     The parties have an actual, present and bona fide dispute as to whether the policy provides coverage for ROSENBERG's claim.

WHEREFORE, KRISTA ROSENBERG, M.D. respectfully requests that this Court:

A. Take jurisdiction over this matter for the purposes of rendering a declaratory decree;

B. Having taken jurisdiction, enter an Order declaring that the subject insurance policy provides coverage for ROSENBERG's claim.

C. Require RELIANCE to indemnify ROSENBERG for any and all benefits due and owing under the policy;

D. Grant such other relief as the Court deems proper; and

E. Retain jurisdiction over the parties and the subject matter to assess reasonable attorneys' fees and costs to ROSENBERG's counsel and assess any and all penalties this Court deems meet and just.

WHEREFORE, Plaintiff, KRISTA ROSENBERG, M.D., respectfully requests this Honorable Court to enter declaratory judgment in its favor and against RELIANCE STANDARD INSURANCE COMPANY, and award damages, costs, and attorneys' fees pursuant to Florida Statute §627.428 and/or §627.6698, pre-judgment interest on all liquidated sums, and demands a trial by jury of all issues so triable.

## COUNT II
## BREACH OF CONTRACT – DISABILITY POLICY

Plaintiff, KRISTA ROSENBERG, M.D., incorporates the allegations contained in Paragraphs 1 through 19 as if fully stated herein and says further the following:

25.     Based on the foregoing, Defendant has breached the contract of insurance and Plaintiff is entitled to the Disability Policy benefits consisting of past long-term disability benefits including prejudgment interest, retroactive to the day benefits were denied.

26.     As a direct and proximate result, Plaintiff is entitled to the benefits identified herein because:

      a.   The benefits are permitted benefits under the Disability Policy;

      b.   Plaintiff has satisfied all conditions to be eligible to receive the benefits; and

      c.   Plaintiff has not waived or otherwise relinquished her entitlement to the benefits.

WHEREFORE, Plaintiff, KRISTA ROSENBERG, M.D., prays for judgment for damages against Defendant, RELIANCE STANDARD INSURANCE COMPANY, together

with prejudgment interest, costs and attorneys' fees pursuant to F.S. §627.428 and/or

§627.6698, and demands a trial by jury as to all issue so triable.

Respectfully submitted this **_22nd_** day of August, 2022.

BENRUBI LAW, P.A.
6501 Congress Avenue, Suite 118
Boca Raton, FL  33487
Office: (561) 910-8650
Email: _Rbenrubi@benrubilaw.com_
Secondary: _cgarcia@benrubilaw.com_

Counsel for Plaintiff

By: _/s/ Richard M. Benrubi_
    RICHARD M. BENRUBI, ESQ.
    Florida Bar No.: 796573

LIGGIO & CORNELL, P.A.
1615 Forum Place, Suite 3B
West Palm Beach, FL 33401
Office: (561) 616-3333
Fax: (561) 616-3266
Email: _jliggio@liggiolaw.com_

Co-Counsel for Plaintiff

By: _/s/ Jeffrey M. Liggio_
    JEFFREY M. LIGGIO, ESQ.
    Florida Bar No.: 357741

**From:** Krista <prosen2908@aol.com>
**Sent:** April 19, 2021 2:03 PM
**To:** Rubin, Amy S.; Burack, Seth B.
**Subject:** [EXT] Fw: Reliance insurance
**Attachments:** Reliance Standard Life (Doctors policy).pdf

**EXHIBIT "A"**

Here is the reliance policy
Thanks
Krista Rosenberg

Sent from the all new AOL app for iOS

Begin forwarded message:

On Tuesday, April 13, 2021, 12:20 PM,

Hi Dr. Rosenberg,

Please see attached LTD policy.

Thank you.

Kind regards,

Retina Group
of Florida™

1

**EXHIBIT "A"**

██████████████████████████████████████████████

**From:** Krista <prosen2908@aol.com>
**Sent:** Tuesday, April 13, 2021 10:43 AM
**To:** ████████████████████████
**Subject:** Reliance insurance

[EXTERNAL] Caution: This email originated from outside of the organization.

████████

Can you please send me our full contract and policy with reliance disability insurance?

Thank you

Krista

Sent from the all new AOL app for iOS

EXHIBIT "A"

# GROUP LONG TERM DISABILITY INSURANCE PROGRAM

## Retina Vitreous Consultants, LLP dba Retina Group of Florida

EXHIBIT "A"

# RELIANCE STANDARD LIFE
# INSURANCE COMPANY
### Home Office:  Chicago, Illinois
### Administrative Office:  Philadelphia, Pennsylvania

## CERTIFICATE OF INSURANCE

We certify that the Person whose name appears on the enrollment card attached to this Certificate is insured for the benefits which apply to his/her class, under Group Policy No. LTD 124706 issued to Retina Vitreous Consultants, LLP dba Retina Group of Florida, the Policyholder.

This Certificate is not a contract of insurance. It contains only the major terms of insurance coverage and payment of benefits under the Policy. It replaces all certificates that may have been issued to you earlier.

Secretary                                        President

## GROUP LONG TERM DISABILITY INSURANCE CERTIFICATE

**If you have any questions about your insurance, or need assistance, please call (877) 268-7606.**

LRS-6570 Ed. 2/83

EXHIBIT "A"

# TABLE OF CONTENTS

**Page**

SCHEDULE OF BENEFITS.................................................................. 1.0

DEFINITIONS .................................................................................. 2.0

TRANSFER OF INSURANCE COVERAGE.......................................... 3.0

GENERAL PROVISIONS ................................................................. 4.0

CLAIMS PROVISIONS .................................................................... 5.0

ELIGIBILITY, EFFECTIVE DATE AND TERMINATION ....................... 6.0

BENEFIT PROVISIONS ................................................................... 7.0

EXCLUSIONS.................................................................................. 8.0

LIMITATIONS ................................................................................. 9.0

SPECIFIC INDEMNITY BENEFIT ...................................................... 10.0

SURVIVOR BENEFIT - LUMP SUM ................................................... 11.0

WORK INCENTIVE AND CHILD CARE BENEFITS ............................. 12.0

EXTENSION OF COVERAGE UNDER THE FAMILY AND
MEDICAL LEAVE ACT AND UNIFORMED SERVICES
EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA) .. 13.0

REHABILITATION BENEFIT............................................................... 14.0

EXHIBIT "A"

## SCHEDULE OF BENEFITS

**EFFECTIVE DATE:** December 1, 2013

**ELIGIBLE CLASSES:** Each active, Full-time Owner/ Physican, except any person employed on a temporary or seasonal basis, who:

    (1) is engaged in a non-hazardous occupation; and
    (2) functions primarily in an office environment.

**WAITING PERIOD:** 90 days of continuous employment.

**YOUR EFFECTIVE DATE:** The first of the month coinciding with or next following completion of the Waiting Period.

**INDIVIDUAL REINSTATEMENT:** 6 months

### LONG TERM DISABILITY BENEFIT

**ELIMINATION PERIOD:** 90 consecutive days of Total Disability.

**MONTHLY BENEFIT:** The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings.

To figure this benefit amount payable:
    (1) multiply your Covered Monthly Earnings by the benefit percentage(s) shown above;
    (2) take the lesser of the amount:
        (a) of step (1) above; or
        (b) the Maximum Monthly Benefit shown below; and
    (3) subtract Other Income Benefits, as shown below, from step (2), above.

We will pay at least the Minimum Monthly Benefit as follows.

**OTHER INCOME BENEFITS:** Other Income Benefits are:
    (1)    disability income benefits you receive because of your Total Disability under any group insurance plan(s);
    (2)    disability income benefits you are eligible to receive because of your Total Disability under any governmental retirement system, except benefits payable under a federal government employee pension benefit;
    (3)    all benefits (except medical or death benefits) including any settlement made in place of such benefits (whether or not liability is admitted) you are eligible to receive because of your Total disability under:
        (a) Workers' Compensation Laws;
        (b) occupational disease law;

LRS-6570-1-0704-FL        Page 1.0

EXHIBIT "A"

        (c)  any other laws of like intent as (a) or (b) above; and

        (d)  any compulsory benefit law;

(4)   any of the following that you are entitled to receive:

        (a)  wages, salary or other compensation, excluding the amount allowable when engaged in Rehabilitative Employment; and

        (b)  commissions or monies from the Policyholder, including vested renewal commissions, but, excluding commissions or monies that you earned prior to Total Disability which are paid after Total Disability has begun;

(5)   that part of disability benefits paid for by the Policyholder which you are eligible to receive because of your Total disability under a group retirement plan; and

(6)   that part of Retirement Benefits paid for by the Policyholder which you are eligible to receive under a group retirement plan; and

(7)   disability or Retirement Benefits under the United States Social Security Act, the Canadian pension plans, or any other government plan for which:

        (a)  you are eligible to receive because of your Total Disability or eligibility for Retirement Benefits; and

        (b)  your dependents are eligible to receive due to (a) above.

Disability and early Retirement Benefits will be offset only if such benefits are elected by you or if election would not reduce the amount of your accrued normal Retirement Benefits then funded.

Retirement Benefits under number (7) above will not apply to disabilities which begin after age 70 if you are already receiving Social Security Retirement Benefits while continuing to work beyond age 70.

**MINIMUM MONTHLY BENEFIT:**  In no event will the Monthly Benefit payable to you be less than $100.

**MAXIMUM MONTHLY BENEFIT:**  $10,000 (this is equal to a maximum Covered Monthly Earnings of $16,667).

EXHIBIT "A"

**MAXIMUM DURATION OF BENEFITS:** Benefits will not accrue beyond the longer of: the Duration of Benefits; or Normal Retirement Age; specified below:

| Age at Disablement | Duration of Benefits (in years) |
|---|---|
| 61 or less | To Age 65 |
| 62 | 3 ½ |
| 63 | 3 |
| 64 | 2 ½ |
| 65 | 2 |
| 66 | 1 ¾ |
| 67 | 1 ½ |
| 68 | 1 ¼ |
| 69 or more | 1 |

OR

Normal Retirement Age as defined by the 1983 Amendments to the United States Social Security Act and determined by your year of birth, as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 years |
| 1938 | 65 years and 2 months |
| 1939 | 65 years and 4 months |
| 1940 | 65 years and 6 months |
| 1941 | 65 years and 8 months |
| 1942 | 65 years and 10 months |
| 1943 thru 1954 | 66 years |
| 1955 | 66 years and 2 months |
| 1956 | 66 years and 4 months |
| 1957 | 66 years and 6 months |
| 1958 | 66 years and 8 months |
| 1959 | 66 years and 10 months |
| 1960 and after | 67 years |

**CHANGES IN MONTHLY BENEFIT:** Increases in the Monthly Benefit are effective on the date of the change, provided you are Actively at Work on the effective date of the change. If you are not Actively at Work on that date, the effective date of the increase in the benefit amount will be deferred until the date you return to Active Work. Decreases in the Monthly Benefit are effective on the date the change occurs.

**CONTRIBUTIONS:**  You are not required to contribute toward the cost of this insurance.

Premium contributions will not be included in your gross income.

For purposes of filing your Federal Income Tax Return, this means that under the law as of the date the Policy was issued, your Monthly Benefit might be treated as taxable.  It is recommended that you contact your personal tax advisor.

EXHIBIT "A"

## DEFINITIONS

"You", "your" and "yours" means a person who meets the Eligibility Requirements of the Policy and is enrolled for this insurance.

"We", "us" and "our" means Reliance Standard Life Insurance Company.

"Actively at Work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to your job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness.

"Claimant" means you made a claim for benefits under the Policy for a loss covered by the Policy as a result of your Injury or Sickness.

"Covered Monthly Earnings" means your basic monthly salary received from the Policyholder on the day just before the date of Total Disability, prior to any deductions to a 401(k) and Section 125 plan. Covered Monthly Earnings does not include commissions, overtime pay, incentive pay or any other special compensation not received as Covered Monthly Earnings. However, "Covered Monthly Earnings" will include bonuses received from the Policyholder averaged over the lesser of:

    (1)  the number of months worked; or
    (2)  the 36 months;

just prior to the date Total Disability began.

and

"Covered Monthly Earnings" means your compensation from the partnership averaged over the lesser of:
    (1)  the number of months worked; or
    (2)  the 36 months;
in the calendar year(s) prior to the date Total Disability began, as reported on the partnership federal income tax return (K1) as "net earnings (loss) from self-employment".

If you were not a partner during the calendar year prior to the date Total Disability began, "Covered Monthly Earnings" means your average monthly compensation (excluding dividends, capital gains and return of capital) from the partnership prior to the date Total Disability began, determined in accordance with the terms of your partnership agreement.

"Elimination Period" means a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no

LRS-6570-2-0704              **Page 2.0**

EXHIBIT "A"

benefit is payable.  It begins on the first day of Total Disability.

Interruption Period: If, during the Elimination Period, you return to Active Work for less than 30 days, then the same or related Total Disability will be treated as continuous.  Days that you are Actively at Work during this interruption period will not count towards the Elimination Period.  This interruption of the Elimination Period will not apply to you if you become eligible under any other group long term disability insurance plan.

"Full-time" means working for the Policyholder for a minimum of 40 hours during your regular work week.

"Hospital" or "Institution" means a facility licensed to provide care and Treatment for the condition causing your Total Disability.

"Injury" means bodily Injury resulting directly from an accident, independent of all other causes.  The Injury must cause Total Disability which begins while your insurance coverage is in effect.

"Physician" means a duly licensed practitioner who is recognized by the law of the state in which treatment is received as qualified to treat the type of Injury or Sickness for which a claim is made.  The Physician may not be you or a member of your immediate family.

"Pre-existing Condition" means any Sickness or Injury for which you received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to your effective date of insurance.

"Regular Occupation" means the occupation you are routinely performing when Total Disability begins.  We will look at your occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

"Retirement Benefits" mean money which you are entitled to receive upon early or normal retirement or disability retirement under:
  (1) any plan of a state, county or municipal retirement system, if such pension benefits include any credit for employment with the Policyholder;
  (2) Retirement Benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act; or
  (3) an employer's retirement plan where payments are made in a lump sum or periodically and do not represent contributions made by you.

LRS-6570-2-0704                     Page 2.1

Retirement Benefits do not include:
    (1)  a federal government employee pension benefit;
    (2)  a thrift plan;
    (3)  a deferred compensation plan;
    (4)  an individual retirement account (IRA);
    (5)  a tax sheltered annuity (TSA);
    (6)  a stock ownership plan; or
    (7)  a profit sharing plan.

"Sickness" means illness or disease causing Total Disability which begins while your insurance coverage is in effect.  Sickness includes pregnancy, childbirth, miscarriage or abortion, or any complications therefrom.

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter you cannot perform the substantial and material duties of your Regular Occupation;
    (1)  "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness you are capable of performing the substantial and material duties of your Regular Occupation on a part-time basis or some of the substantial and material duties on a full-time basis.  If you are Partially Disabled you will be considered Totally Disabled, except during the Elimination Period; and
    (2)  "Residual Disability" means being Partially Disabled during the Elimination Period.  Residual Disability will be considered Total Disability.

If you are employed by the Policyholder and require a license for such occupation, the loss of such license for any reason does not in and of itself constitute "Total Disability".

EXHIBIT "A"

## TRANSFER OF INSURANCE COVERAGE

If you were covered under any group long term disability insurance plan maintained by the Policyholder prior to the Policy's Effective Date, you will be insured under the Policy, provided that you are Actively At Work and meet all of the requirements for being an Eligible Person under the Policy on its Effective Date.

If you were covered under the prior group long term disability plan maintained by the Policyholder prior to the Policy's Effective Date, but were not Actively at Work due to Injury or Sickness on the Effective Date of the Policy and would otherwise qualify as an Eligible Person, coverage will be allowed under the following conditions:

(1)  You must have been insured with the prior carrier on the date of the transfer; and

(2)  Premiums must be paid; and

(3)  Total Disability must begin on or after the Policy's Effective Date.

If you are receiving long term disability benefits, become eligible for coverage under another group long term disability insurance plan, or have a period of recurrent disability under the prior group long term disability insurance plan, you will not be covered under the Policy.  If premiums have been paid on your behalf under the Policy, those premiums will be refunded.

**Pre-existing Conditions Limitation Credit**

If you are an Eligible Person on the Effective Date of the Policy, any time used to satisfy the Pre-existing Conditions Limitation of the prior group long term disability insurance plan will be credited towards the satisfaction of the Pre-existing Conditions Limitation of the Policy.

**Waiting Period Credit**

If you are an Eligible Person on the Effective Date of the Policy, any time used to satisfy any Waiting Period of the prior group long term disability insurance plan will be credited towards the satisfaction of the Waiting Period of the Policy.

EXHIBIT "A"

## GENERAL PROVISIONS

**TIME LIMIT ON CERTAIN DEFENSES:**  After the Policy has been in force for two (2) years from its Effective Date, no statement made by you on a written application for insurance shall be used to reduce or deny a claim after your insurance coverage, with respect to which claim has been made, has been in effect for two (2) years.

**CLERICAL ERROR:**  Clerical errors in connection with the Policy or delays in keeping records for the Policy, whether by the Policyholder, the Plan Administrator, or us:

    (1)  will not terminate insurance that would otherwise have been effective; and

    (2)  will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

**NOT IN LIEU OF WORKERS' COMPENSATION:**  The Policy is not a Workers' Compensation Policy.  It does not provide Workers' Compensation benefits.

**WAIVER OF PREMIUM:**  No premium is due us while you are receiving Monthly Benefits from us.  Once Monthly Benefits cease due to the end of your Total Disability, premium payments must begin again if insurance is to continue.

EXHIBIT "A"

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after a Total Disability covered by the Policy occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Office or to our authorized agent. The notice should include your name, the Policyholder's name and the Policy Number.

**CLAIM FORMS:** When we receive the notice of claim, we will send you the claim forms to file with us. We will send them within fifteen (15) days after we receive notice. If we do not, then the proof of Total Disability will be met by giving us a written statement of the type and extent of the Total Disability. The statement must be sent within ninety (90) days after the loss began.

**WRITTEN PROOF OF TOTAL DISABILITY:** For any Total Disability covered by the Policy, written proof must be sent to us within ninety (90) days after the Total Disability occurs. If written proof is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof was given as soon as was reasonably possible. In any event, proof must be given within one (1) year after the Total Disability occurs, unless you are legally incapable of doing so.

**TIME OF PAYMENT OF CLAIMS:** After receiving written proof of loss, we will pay monthly all benefits then due because of your Total Disability. Benefits for any other loss covered by the Policy will be paid as soon as we receive written proof.

We will either pay the claim or notify you in writing that the claim has been denied within forty-five (45) days after receipt of written proof of Total Disability. If additional information is required in order to review the claim, we will pay or deny such claim within sixty (60) days after receipt of the additional information. In any case, we will either pay or deny any claim not later than one hundred twenty (120) days after receiving written proof of Total Disability. Any overdue payments will include interest at a rate of ten (10%) percent per annum.

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by the Policy, we will pay any benefits due. Benefits that provide for periodic payment will be paid for each period as we become liable.

We will pay benefits to you, if living, or else to your estate.

If you died and we have not paid all benefits due, we may pay up to $3,000 to any relative by blood or marriage, or to the executor or administrator of your estate. The payment will only be made to persons entitled to it. An expense incurred as a result of your last illness, death

LRS-6570-36-0394 Page 5.0

EXHIBIT "A"

or burial will entitle a person to this payment.  The payments will cease when a valid claim is made for the benefit.  We will not be liable for any payment we have made in good faith.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance certificate and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance certificate and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**ARBITRATION OF CLAIMS:** Any claim or dispute arising from or relating to our determination regarding your Total Disability may be settled by arbitration when agreed to by you and us in accordance with the Rules for Health and Accident Claims of the American Arbitration Association or by any other method agreeable to you and us.  In the case of a claim under an Employee Retirement Income Security Act (hereinafter referred to as ERISA) Plan, your ERISA claim appeal remedies, if applicable, must be exhausted before the claim may be submitted to arbitration.  Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction over such awards.

Unless otherwise agreed to by you and us, any such award will be binding on you and us for a period of twelve (12) months after it is rendered assuming that the award is not based on fraudulent information and you continue to be Totally Disabled.  At the end of such twelve (12) month period, the issue of Total Disability may again be submitted to arbitration in accordance with this provision.

Any costs of said arbitration proceedings levied by the American Arbitration Association or the organization or person(s) conducting the proceedings will be paid by us.

**PHYSICAL EXAMINATION AND AUTOPSY:** We will, at our expense, have the right to have you interviewed and/or examined:
  (1)  physically;
  (2)  psychologically; and/or
  (3)  psychiatrically;
to determine the existence of any Total Disability which is the basis for a claim.  This right may be used as often as it is reasonably required while a claim is pending.

We can have an autopsy made unless prohibited by law.

**LEGAL ACTIONS:** No legal action may be brought against us to recover on the Policy within sixty (60) days after written proof of loss has been given as required by the Policy.  No action may be brought after the

LRS-6570-36-0394                    Page 5.1

EXHIBIT "A"

expiration of the applicable statute of limitations from the time written proof of loss is required to be given.

EXHIBIT "A"

## ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**ELIGIBILITY REQUIREMENTS:**  You are eligible for insurance under the Policy if you:
- (1) are a member of an Eligible Class, as shown on the Schedule of Benefits page; and
- (2) have completed the Waiting Period, as shown on the Schedule of Benefits page.

**WAITING PERIOD:**  If you are continuously employed on a Full-time basis with the Policyholder for the period specified on the Schedule of Benefits page, then you have satisfied the Waiting Period.

**EFFECTIVE DATE OF YOUR INSURANCE:**  If the Policyholder pays the entire Premium due for you, your insurance will go into effect on Your Effective Date, as shown on the Schedule of Benefits page.

If you pay a part of the Premium, you must apply in writing for the insurance to go into effect.  You will become insured on the latest of:
- (1) Your Effective Date, as shown on the Schedule of Benefits page, if you apply on or before that date;
- (2) on the first of the month coinciding with or next following the date you apply, if you apply within thirty-one (31) days from the date you first met the Eligibility Requirements; or
- (3) on the first of the month coinciding with or next following the date we approve any required proof of health acceptable to us.  We require this proof if you apply:
  - (a) after thirty-one (31) days from the date you first met the Eligibility Requirements; or
  - (b) after you terminated this insurance but remained in an Eligible Class, as shown on the Schedule of Benefits page.

The insurance for you will not go into effect on a date you are not Actively at Work because of a Sickness or Injury.  The insurance will go into effect after you are Actively at Work for one (1) full day in an Eligible Class, as shown on the Schedule of Benefits page.

**TERMINATION OF YOUR INSURANCE:** Your insurance will terminate on the first of the following to occur:
- (1) the date the Policy terminates;
- (2) the date you cease to meet the Eligibility Requirements;
- (3) the end of the period for which Premium has been paid for you; or
- (4) the date you enter military service (not including Reserve or National Guard).

LRS-6570-32 Ed. 2/83          Page 6.0

EXHIBIT "A"

**YOUR REINSTATEMENT:**  If you are terminated, your insurance may be reinstated if you return to Active Work with the Policyholder within the period of time as shown on the Schedule of Benefits page.  You must also be a member of an Eligible Class, as shown on the Schedule of Benefits page, and have been:

    (1)  on a leave of absence approved by the Policyholder; or
    (2)  on temporary lay-off.

You will not be required to fulfill the Eligibility Requirements of the Policy again.  The insurance will go into effect after you return to Active Work for one (1) full day.  If you return after having resigned or having been discharged, you will be required to fulfill the Eligibility Requirements of the Policy again.  If you return after terminating insurance at your request or for failure to pay Premium when due, proof of health acceptable to us must be submitted before you may be reinstated.

**EXTENSION OF BENEFITS:**  Termination of the Policy will not affect any claim which was covered prior to termination, subject to the terms and conditions of the Policy.

EXHIBIT "A"

## BENEFIT PROVISIONS

**INSURING CLAUSE:**  We will pay a Monthly Benefit if you:
    (1)  are Totally Disabled as the result of a Sickness or Injury covered by the Policy;
    (2)  are under the regular care of a Physician;
    (3)  have completed the Elimination Period; and
    (4)  submit satisfactory proof of Total Disability to us.

Please refer to the Schedule of Benefits for the MONTHLY BENEFIT and OTHER INCOME BENEFITS.

Benefits you are entitled to receive under OTHER INCOME BENEFITS will be estimated if the benefits:
    (1)  have not been applied for; or
    (2)  have been applied for and a decision is pending; or
    (3)  have been denied and the denial may be appealed.

The Monthly Benefit will be reduced by the estimated amount.  If benefits have been estimated, the Monthly Benefit will be adjusted when we receive proof:
    (1)  of the amount awarded; or
    (2)  that benefits have been denied and the denial cannot be further appealed.

If we have underpaid the Monthly Benefit for any reason, we will make a lump sum payment.  If we have overpaid the Monthly Benefit for any reason, the overpayment must be repaid to us.  At our option, we may reduce the Monthly Benefit or ask for a lump sum refund.  If we reduce the Monthly Benefit, the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page, would not apply.

For each day of a period of Total Disability less than a full month, the amount payable will be 1/30th of the Monthly Benefit.

**COST OF LIVING FREEZE:**  After the initial deduction for any Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under these Other Income Benefits.

**LUMP SUM PAYMENTS:**  If Other Income Benefits are paid in a lump sum, the sum will be prorated over the period of time to which the Other Income benefits apply.  If no period of time is given, the sum will be prorated over sixty (60) months.

**TERMINATION OF MONTHLY BENEFIT:**  The Monthly Benefit will stop on the earliest of:

LRS-6570-6-0704                Page 7.0

EXHIBIT "A"

(1)  the date you cease to be Totally Disabled;

(2)  the date you die;

(3)  the Maximum Duration of Benefits, as shown on the Schedule of Benefits page, has ended; or

(4)  the date you fail to furnish the required proof of Total Disability.

**RECURRENT DISABILITY:**  If, after a period of Total Disability for which benefits are payable, you return to Active Work for at least six (6) consecutive months, any recurrent Total Disability for the same or related cause will be part of a new period of Total Disability.  A new Elimination Period must be completed before any further Monthly Benefits are payable.

If you return to Active Work for less than six (6) months, a recurrent Total Disability for the same or related cause will be part of the same Total Disability.  A new Elimination Period is not required.  Our liability for the entire period will be subject to the terms of the Policy for the original period of Total Disability.

If you become eligible for insurance coverage under any other group long term disability insurance plan, then this recurrent disability section will not apply to you.

EXHIBIT "A"

## EXCLUSIONS

We will not pay a Monthly Benefit for any Total Disability caused by:

    (1)  an act of war, declared or undeclared; or

    (2)  an intentionally self-inflicted Injury; or

    (3)  the Insured committing a felony; or

    (4)  an Injury or Sickness that occurs while the Insured is confined in any penal or correctional institution.

EXHIBIT "A"

# LIMITATIONS

**MENTAL OR NERVOUS DISORDERS:**   Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless you are in a Hospital or Institution at the end of the twenty-four (24) month period.  The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

If you were confined in a Hospital or Institution and:
    (1)  Total Disability continues beyond discharge;
    (2)  the confinement was during a period of Total Disability; and
    (3)  the period of confinement was for at least fourteen (14) consecutive days;
then upon discharge, Monthly Benefits will be payable for the greater of:
    (1)  the unused portion of the twenty-four (24) month period; or
    (2)  ninety (90) days;
but in no event beyond the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.

Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as:
    (1)  bipolar disorder (manic depressive syndrome);
    (2)  schizophrenia;
    (3)  delusional (paranoid) disorders;
    (4)  psychotic disorders;
    (5)  depressive disorders;
    (6)  anxiety disorders;
    (7)  somatoform disorders (psychosomatic illness);
    (8)  eating disorders; or
    (9)  mental illness.

**SUBSTANCE ABUSE:**   Monthly Benefits for Total Disability due to alcoholism or drug addiction will be payable while you are a participant in a Substance Abuse Rehabilitation Program.  The Monthly Benefit will not be payable beyond twenty-four (24) months.

LRS-6570-85-0994          Page 9.0

EXHIBIT "A"

If, during a period of Total Disability due to Substance Abuse for which a Monthly Benefit is payable, you are able to perform Rehabilitative Employment, the Monthly Benefit, less 50% of any of the money received from this Rehabilitative Employment will be paid until:  (1) you are performing all the material duties of your Regular Occupation on a full-time basis; or (2) the end of twenty-four (24) consecutive months from the date that the Elimination Period is satisfied, whichever is earlier. All terms and conditions of the Rehabilitation Benefit will apply to Rehabilitative Employment due to Substance Abuse.

"Substance Abuse" means the pattern of pathological use of a Substance which is characterized by:
    (1)  impairments in social and/or occupational functioning;
    (2)  debilitating physical condition;
    (3)  inability to abstain from or reduce consumption of the Substance; or
    (4)  the need for daily Substance use for adequate functioning.

"Substance" means alcohol and those drugs included on the Department of Health, Retardation and Hospitals' Substance Abuse list of addictive drugs, except tobacco and caffeine are excluded.

A Substance Abuse Rehabilitation Program means a program supervised by a Physician or a licensed rehabilitation specialist approved by us.

**PRE-EXISTING CONDITIONS:**  Benefits will not be paid for a Total Disability:
    (1)  caused by;
    (2)  contributed to by; or
    (3)  resulting from;
a Pre-existing Condition unless you have been Actively at Work for one (1) full day following the end of twelve (12) consecutive months from the date you became insured.

EXHIBIT "A"

## SPECIFIC INDEMNITY BENEFIT

If you suffer any one of the Losses listed below from an accident resulting in an Injury, we will pay a guaranteed minimum number of Monthly Benefit payments, as shown below. However:

    (1)  the Loss must occur within one hundred and eighty (180) days; and

    (2)  you must live past the Elimination Period.

<u>For Loss of:</u>

<u>Number of Monthly Benefit Payments:</u>

| | |
|---|---|
| Both Hands | 46 Months |
| Both Feet | 46 Months |
| Entire Sight in Both Eyes | 46 Months |
| Hearing in Both Ears | 46 Months |
| Speech | 46 Months |
| One Hand and One Foot | 46 Months |
| One Hand and Entire Sight in One Eye | 46 Months |
| One Foot and Entire Sight in One Eye | 46 Months |
| One Arm | 35 Months |
| One Leg | 35 Months |
| One Hand | 23 Months |
| One Foot | 23 Months |
| Entire Sight in One Eye | 15 Months |
| Hearing in One Ear | 15 Months |

"Loss(es)" with respect to:
    (1)  hand or foot, means the complete severance through or above the wrist or ankle joint;
    (2)  arm or leg, means the complete severance through or above the elbow or knee joint; or
    (3)  sight, speech or hearing, means total and irrecoverable Loss thereof.

If more than one (1) Loss results from any one accident, payment will be made for the Loss for which the greatest number of Monthly Benefit payments is provided.

The amount payable is the Monthly Benefit, as shown on the Schedule of Benefits page, with no reduction from Other Income Benefits. The number of Monthly Benefit payments will not cease if you return to Active Work. If death occurs after we begin paying Monthly Benefits, but before the Specific Indemnity Benefit has been paid according to the above schedule, the balance remaining at time of death will be paid to your

EXHIBIT "A"

estate, unless a beneficiary is on record with us under the Policy.

Benefits may be payable longer than shown above as long as you are still Totally Disabled, subject to the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.

EXHIBIT "A"

## SURVIVOR BENEFIT - LUMP SUM

We will pay a benefit to your Survivor when we receive proof that you died while:

(1) you were receiving Monthly Benefits from us; and

(2) you were Totally Disabled for at least one hundred and eighty (180) consecutive days.

The benefit will be an amount equal to 3 times your last Monthly Benefit. The last Monthly Benefit is the benefit you were eligible to receive right before your death.   It is not reduced by wages earned while in Rehabilitative Employment.

A benefit payable to a minor may be paid to the minor's legally appointed guardian.  If there is no guardian, at our option, we may pay the benefit to an adult that has, in our opinion, assumed the custody and main support of the minor.  We will not be liable for any payment we have made in good faith.

"Survivor" means your spouse.  If the spouse dies before you or if you were legally separated, then your natural, legally adopted or step-children, who are under age twenty-five (25) will be the Survivors.  If there are no eligible Survivors, payment will be made to your estate, unless a beneficiary is on record with us under the Policy.

EXHIBIT "A"

## WORK INCENTIVE AND CHILD CARE BENEFITS

### WORK INCENTIVE BENEFIT

During the first twelve (12) months of Rehabilitative Employment during which a Monthly Benefit is payable, we will not offset earnings from such Rehabilitative Employment until the sum of:

    (1)  the Monthly Benefit prior to offsets with Other Income Benefits; and

    (2)  earnings from Rehabilitative Employment;

exceed 100% of your Covered Monthly Earnings.  If the sum above exceeds 100% of Covered Monthly Earnings, our Benefit Amount will be reduced by such excess amount until the sum of (1) and (2) above equals 100%.

### CHILD CARE BENEFIT

We will allow a Child Care Benefit if:

    (1)  you are receiving benefits under the Work Incentive Benefit;

    (2)  your Child(ren) is (are) under 14 years of age;

    (3)  the child care is provided by a non-relative; and

    (4)  the charges for child care are documented by a receipt from the caregiver, including social security number or taxpayer identification number.

During the twelve (12) month period in which you are eligible for the Work Incentive Benefit, an amount equal to actual expenses incurred for child care, up to a maximum of $250 per month, will be added to your Covered Monthly Earnings when calculating the Benefit Amount under the Work Incentive Benefit.

Child(ren) means:  your unmarried child(ren), including any foster child, adopted child or step child who resides in your home and is financially dependent on you for support and maintenance.

EXHIBIT "A"

## EXTENSION OF COVERAGE UNDER THE FAMILY AND MEDICAL LEAVE ACT AND UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA)

**Family and Medical Leave of Absence:**

We will continue your coverage in accordance with the Policyholder's policies regarding leave under the Family and Medical Leave Act of 1993, as amended, or any similar state law, as amended, if:

(1) the premium for you continues to be paid during the leave; and
(2) the Policyholder has approved your leave in writing and provides a copy of such approval within thirty-one (31) days of our request.

As long as the above requirements are satisfied, we will continue coverage until the later of:

(1) the end of the leave period required by the Family and Medical Leave Act of 1993, as amended; or
(2) the end of the leave period required by any similar state law, as amended.

**Military Services Leave of Absence:**

We will continue your coverage in accordance with the Policyholder's policies regarding Military Services Leave of Absence under USERRA if the premium for you continues to be paid during the leave.

As long as the above requirement is satisfied, we will continue coverage until the end of the period required by USERRA.

The Policy, while coverage is being continued under the Military Services Leave of Absence extension, does not cover any loss which occurs while on active duty in the military if such loss is caused by or arises out of such military service, including but not limited to war or any act of war, whether declared or undeclared.

While you are on a Family and Medical Leave of Absence for any reason other than your own illness, injury or disability or Military Services Leave of Absence you will be considered Actively at Work.  Any changes such as revisions to coverage due to age, class or salary changes, as applicable, will apply during the leave except that increases in the amount of insurance, whether automatic or subject to election, will not be effective if you are not considered Actively at Work until you have returned to Active Work for one (1) full day.

LRS-6570-74-0708          Page 13.0

EXHIBIT "A"

A leave of absence taken in accordance with the Family and Medical Leave Act of 1993 or USERRA will run concurrently with any other applicable continuation of insurance provision in the Policy.

Your coverage will cease under this extension on the earliest of:

(1) the date the Policy terminates; or
(2) the end of the period for which premium has been paid for you; or
(3) the date such leave should end in accordance with the Policyholder's policies regarding Family and Medical Leave of Absence and Military Services Leave of Absence in compliance with the Family and Medical Leave Act of 1993, as amended and USERRA. Coverage will not be terminated if you become Totally Disabled during the period of the leave and are eligible for benefits according to the terms of the Policy. Any Monthly Benefit which becomes payable will be based on your Covered Monthly Earnings immediately prior to the date of Total Disability.

Should the Policyholder choose not to continue your coverage during a Family and Medical Leave of Absence and/or Military Services Leave of Absence, your coverage will be reinstated.

EXHIBIT "A"

## REHABILITATION BENEFIT

"Rehabilitative Employment" means work in any gainful occupation for which your training, education or experience will reasonably allow. The work must be approved by a Physician or a licensed or certified rehabilitation specialist approved by us. Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of your Regular Occupation on a full-time basis.

If you are receiving a Monthly Benefit because you are considered Totally Disabled under the terms of the Policy and are able to perform Rehabilitative Employment, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment.

If you are able to perform Rehabilitative Employment when Totally Disabled due to Substance Abuse, we will continue to pay the Monthly Benefit less an amount equal to 50% of earnings received through such Rehabilitative Employment. This Monthly Benefit is payable for a maximum of twenty-four (24) consecutive months from the date the Elimination Period is satisfied.

You will be considered able to perform Rehabilitative Employment if a Physician or licensed or certified rehabilitation specialist approved by us determines that you can perform such employment. If you refuse such Rehabilitative Employment, or have been performing Rehabilitative Employment and refuse to continue such employment, even though a Physician or licensed or certified rehabilitation specialist approved by us has determined that you are able to perform Rehabilitative Employment, the Monthly Benefit will be reduced by 50%, without regard to the Minimum Monthly Benefit.

EXHIBIT "A"

**RELIANCE STANDARD LIFE INSURANCE COMPANY**

**AMENDATORY RIDER**

It is hereby understood and agreed that the Certificate to which this Rider is attached shall be amended by the addition of the following:

**Applicable to Vermont Residents Only**

The following sections/provisions of the Certificate are amended to comply with Vermont law:

1.  **Schedule of Benefits section, Elimination Period provision.**

    The Elimination Period will be the lesser of the number of days shown on the Schedule of Benefits in the certificate or:

    For Benefit Periods 2 years and greater:  365 days.

    For Benefit Periods greater than 1 year but less than 2 years: 180 days.

2.  **Definitions section, definition of Full-Time, if such definition is included in the Certificate is replaced with:**

    "Full-time" means working for the Policyholder for a minimum of 17.5 hours during your regular work week.

3.  **Limitations section, Mental or Nervous Disorders and/or Substance Abuse, if such limitations are included in the Certificate.**

    If the Certificate contains limitations in coverage for mental or nervous disorders and/or substance abuse, such limitations will not apply to Vermont residents.  Coverage for these conditions will be treated the same as other conditions that may entitle you to full benefits.

4.  **Limitations section, Pre-existing Conditions, if such limitation is included in the Certificate.**

LRS-8352-01-0887

EXHIBIT "A"

The pre-existing condition provision time period in the definition of Pre-existing Condition shall be the lesser of the time period shown on the Limitations form in the Certificate or twelve (12) months.

The period of time during which you become Totally Disabled due to a Pre-existing Condition and a benefit is not payable for such Total Disability is the lesser of the time period as shown in the certificate or twelve (12) months.

All other terms and conditions remain unchanged.

**RELIANCE STANDARD LIFE INSURANCE COMPANY**

Secretary

LRS-8352-01-0887

# Claim Procedures and
# ERISA Statement of Rights

## CLAIM PROCEDURES FOR CLAIMS FILED WITH
## RELIANCE STANDARD LIFE INSURANCE COMPANY
## ON OR AFTER JANUARY 1, 2002

### CLAIMS FOR BENEFITS

Claims may be submitted by mailing the completed form along with any requested information to:

Reliance Standard Life Insurance Company
Claims Department
P.O. Box 8330
Philadelphia, PA  19101-8330

Claim forms are available from your benefits representative or may be requested by writing to the above address or by calling 1-800-644-1103.

### TIMING OF NOTIFICATION OF BENEFIT DETERMINATION

Non-Disability Benefit Claims
If a non-disability claim is wholly or partially denied, the claimant shall be notified of the adverse benefit determination within a reasonable period of time, but not later than 90 days after our receipt of the claim, unless it is determined that special circumstances require an extension of time for processing the claim.  If it is determined that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period.  In no event shall such extension exceed a period of 90 days from the end of such initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the benefit determination is expected to be rendered.

Calculating time periods.  The period of time within which a benefit determination is required to be made shall begin at the time a claim is filed, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

Disability Benefit Claims

In the case of a claim for disability benefits, the claimant shall be notified of the adverse benefit determination within a reasonable period of time, but not later than 45 days after our receipt of the claim. This period may be extended for up to 30 days, provided that it is determined that such an extension is necessary due to matters beyond our control and that notification is provided to the claimant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which a decision is expected to be rendered. If, prior to the end of the first 30-day extension period, it is determined that, due to matters beyond our control, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the claimant is notified, prior to the expiration of the first 30-day extension period, of the circumstances requiring the extension and the date by which a decision is expected to be rendered. In the case of any such extension, the notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information.

Calculating time periods. The period of time within which a benefit determination is required to be made shall begin at the time a claim is filed, without regard to whether all the information necessary to make a benefit determination accompanies the filing. In the event that a period of time is extended due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

## MANNER AND CONTENT OF NOTIFICATION OF BENEFIT DETERMINATION

Non-Disability Benefit Claims

A Claimant shall be provided with written notification of any adverse benefit determination. The notification shall set forth, in a manner calculated to be understood by the claimant, the following:

1. The specific reason or reasons for the adverse determination;
2. Reference to the specific plan/policy provisions on which the determination is based;
3. A description of any additional material or information necessary for

the claimant to perfect the claim and an explanation of why such material or information is necessary; and

4. A description of the review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") (where applicable), following an adverse benefit determination on review.

<u>Disability Benefit Claims</u>

A claimant shall be provided with written notification of any adverse benefit determination.  The notification shall be set forth, in a manner calculated to be understood by the claimant, the following:

1. The specific reason or reasons for the adverse determination;
2. Reference to the specific plan/policy provisions on which the determination is based;
3. A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
4. A description of the review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974 as amended ("ERISA") (where applicable), following an adverse benefit determination on review; and
5. If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

The term "Reliance Standard Life Insurance Company" means Reliance Standard Life Insurance Company and/or its authorized claim administrators.

## ERISA STATEMENT OF RIGHTS

As a participant in the Group Insurance Plan, you may be entitled to certain rights and protections in the event that the Employee Retirement Income Security Act of 1974 (ERISA) applies.  ERISA provides that all Plan Participants shall be entitled to:

### Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description.  The Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report.  The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefits plan.  The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interests of you and other Plan Participants and Beneficiaries.  No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**Enforce Your Rights**

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of the Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal Court. If it should happen that Plan Fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator.  If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C.   20210.   You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

# RELIANCE STANDARD
## LIFE INSURANCE COMPANY
### A MEMBER OF THE TOKIO MARINE GROUP

Home Office: Chicago, Illinois
Administrative Office: Philadelphia, Pennsylvania

LTD 124706                                                    CLASS 1
Ed. 12/2013

other information relevant to the claimant's claim for benefits;

4. The review on (timely) appeal shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

5. No deference to the initial adverse benefit determination shall be afforded upon appeal;

6. The appeal shall be conducted by an individual who is neither the individual who made the (underlying) adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

7. Any medical or vocational expert(s) whose advice was obtained in connection with a claimant's adverse benefit determination shall be identified, without regard to whether the advice was relied upon in making the benefit determination; and

8. In deciding the appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, the individual conducting the appeal shall consult with a health care professional:

   (a) who has appropriate training and experience in the field of medicine involved in the medical judgment; and

   (b) who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal; nor the subordinate of any such individual.

## TIMING OF NOTIFICATION OF BENEFIT DETERMINATION ON REVIEW

<u>Non-Disability Benefit Claims</u>
The claimant (or their authorized representative) shall be notified of the benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's timely request for review, unless it is determined that special circumstances require an extension of time for processing the appeal. If it is determined that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period. In no event shall such extension exceed a period of 60 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the determination on review is expected to be rendered.

Calculating time periods. The period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is timely filed, without regard to whether all the information

**APPEALS OF ADVERSE BENEFIT DETERMINATIONS**

Appeals of adverse benefit determinations may be submitted in accordance with the following procedures to:

Reliance Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA 19101-8330

Non-Disability Benefit Claims
1.  Claimants (or their authorized representatives) must appeal within 60 days following their receipt of a notification of an adverse benefit determination, and only one appeal is allowed;
2.  Claimants shall be provided with the opportunity to submit written comments, documents, records, and/or other information relating to the claim for benefits in conjunction with their timely appeal;
3.  Claimants shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits;
4.  The review on (timely) appeal shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;
5.  No deference to the initial adverse benefit determination shall be afforded upon appeal;
6.  The appeal shall be conducted by an individual who is neither the individual who made the (underlying) adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual; and
7.  Any medical or vocational expert(s) whose advice was obtained in connection with a claimant's adverse benefit determination shall be identified, without regard to whether the advice was relied upon in making the benefit determination.

Disability Benefit Claims
1.  Claimants (or their authorized representatives) must appeal within 180 days following their receipt of a notification of an adverse benefit determination, and only one appeal is allowed;
2.  Claimants shall be provided with the opportunity to submit written comments, documents, records, and/or other information relating to the claim for benefits in conjunction with their timely appeal;
3.  Claimants shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and

necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as above due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

Disability Benefit Claims

The claimant (or their authorized representative) shall be notified of the benefit determination on review within a reasonable period of time, but not later than 45 days after receipt of the claimant's timely request for review, unless it is determined that special circumstances require an extension of time for processing the appeal. If it is determined that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 45-day period. In no event shall such extension exceed a period of 45 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the determination on review is expected to be rendered.

Calculating time periods. The period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is timely filed, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as above due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

## MANNER AND CONTENT OF NOTIFICATION OF BENEFIT DETERMINATION ON REVIEW

Non-Disability Benefit Claims

A claimant shall be provided with written notification of the benefit determination on review. In the case of an adverse benefit determination on review, the notification shall set forth, in a manner calculated to be understood by the claimant, the following:

1. The specific reason or reasons for the adverse determination;
2. Reference to the specific plan/policy provisions on which the determination is based;

3. A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits; and

4. A statement of the claimant's right to bring an action under section 502(a) of ERISA (where applicable).

Disability Benefit Claims
A claimant must be provided with written notification of the determination on review.  In the case of adverse benefit determination on review, the notification shall set forth, in a manner calculated to be understood by the claimant, the following:

1. The specific reason or reasons for the adverse determination;

2. Reference to the specific plan/policy provisions on which the determination is based;

3. A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits;

4. A statement of the claimant's right to bring an action under section 502(a) of ERISA (where applicable);

5. If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; and

6. The following statement: "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency (where applicable)."

## DEFINITIONS

The term "adverse benefit determination" means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan.

The term "us" or "our" refers to Reliance Standard Life Insurance Company.

The term "relevant" means:

A document, record, or other information shall be considered relevant to a claimant's claim if such document, record or other information:

- Was relied upon in making the benefit determination;

- Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination;

- Demonstrates compliance with administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants; or

- In the case of a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit of the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

# ∣RELIANCE STANDARD
## ∣LIFE INSURANCE COMPANY
#### A MEMBER OF THE TOKIO MARINE GROUP

P.O. Box 8330
Philadelphia, PA 19101-8330
(800) 351-7500
Fax (267) 256-4262

September 30, 2021

Krista Rosenberg
102 NE 2nd St #305
Boca Raton, FL  33432

**EXHIBIT "B"**

Re:  Claimant:              Krista Rosenberg
     Policy No:             LTD 124706
     Claim No:              2021-04-29-0227-LTD-01
     Policyholder:          Retina Vitreous Consultants, LLP dba Retina Group of Florida

Dear Krista Rosenberg:

We would like to express our appreciation for your patience and cooperation during the review of your claim for Long Term Disability (LTD) benefits. We have now completed our determination regarding your eligibility for benefits under the above group LTD policy.

The group policy states:

*ELIGIBLE CLASSES:  Each active, Full-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications:*

    *CLASS 1:  Owner/ Physician who:*

        *(1) is engaged in a non-hazardous occupation; and*
        *(2) functions primarily in an office environment.*

    *CLASS 2:  Manager and Administrator*

*CLASS 1: "Covered Monthly Earnings" means the Insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) and Section 125 plan. Covered Monthly Earnings does not include commissions, overtime pay, incentive pay or any other special compensation not received as Covered Monthly Earnings. However, "Covered Monthly Earnings" will include bonuses received from you averaged over the lesser of:*

> *(1) the number of months worked; or*
> *(2) the 36 months;*

*just prior to the date Total Disability began.*

*AND*

*With respect to a Partner, "Covered Monthly Earnings" means the Insured's compensation from the partnership averaged over the lesser of:*

> *(1) the number of months worked; or*
> *(2) the 36 months;*

*in the calendar year(s) prior to the date Total Disability began, as reported on the partnership federal income tax return as "self-employment earnings (loss)" per Schedule K1, Federal Form 1065 (box 14).*

*If the Insured was not a partner during the calendar year prior to the date Total Disability began, "Covered Monthly Earnings" means the Insured's average monthly compensation (excluding dividends, capital gains and return of capital) from the partnership prior to the date Total Disability began, determined in accordance with the terms of the Insured's partnership agreement.*

*MONTHLY BENEFIT: The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.*

In order to calculate the Covered Monthly Earnings (defined above), we reviewed your Schedule K1 Federal Form 1065 for the 36 months (2018, 2019 and 2020) prior to your disability date of February 24, 2021. In review of the Schedule K1, for each of the 3 years, there is no reported income in Box 14 as self-employment earnings (loss). As it appears, in review of your tax returns, that your employer is paying your corporation and not you directly, there are no eligible earnings upon which to base a benefit in accordance with your group's LTD policy definition of Covered Monthly Earnings.

We regret our decision could not be more favorable. Our determination has been based on the information contained in your file and the policy provisions applicable to your claim.

You may request a review of this determination by submitting your request in writing to:

Reliance Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA  19101-8330

**EXHIBIT "B"**

This written request for review must be submitted within 180 days of your receipt of this letter. Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits, including but not limited to any information submitted in conjunction with any claim for Social Security disability or other benefits which you would like us to consider. Only one review will be allowed, and your request must be submitted within 180 days of your receipt of this letter to be considered.

Any such review will be conducted by an individual who is neither the individual who made the underlying determination that is the subject of the review, nor the subordinate of such individual. Under normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive your request for review. If we determine that special circumstances require an extension of time for processing, you will ordinarily be notified of the decision no later than 90 days from the date we receive your request for review.

We will, upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits. We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination.

In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and affect your ability to bring civil action under the Act.

Nothing in this letter should be construed as a waiver of any of Reliance Standard Life Insurance Company's rights and defenses under the above policy, and all these rights and defenses are reserved to the Company, whether or not specifically mentioned herein.

If you have any questions regarding this matter, please feel free to contact us at 1-800-351-7500.

Sincerely,

*Courtney Holmes*

Courtney Holmes for Lorrie Dobson
LTD Claims Department

**NOTICE OF LANGUAGE ASSISTANCE SERVICES**

**语言协助服务通知 (Chinese)**

**SAAD BEE ÁKÁ E'EYEED NIHÁ HÓLǪ́ (Navajo)**

**AVISO SOBRE LOS SERVICIOS DE ASISTENCIA LINGÜÍSTICA (Spanish)**

**ABISO SA MGA SERBISYO NG TULONG SA WIKA (Tagalog)**

If you need language assistance in translating this letter, language interpretation during phone calls, or language assistance for any other matters relating to your claim, please call.

如果您在翻译本函时需要语言协助，在通话期间需要语言口译，或需要与您理赔有关任何其它事宜的语言协助，请致电。**(Chinese)**

Haada yit'éego díí naaltsoos nich'į' ályaaígíí t'áá shizaad k'ehjí shich'į' yídóoltah nínízingo dóó t'áá shizaad k'ehjí choo'įį dooleeł nínízingo t'áá ha'át'íhí da kwe'é bídéét'i'ígíí biniiye kojį' hodiilnih. **(Navajo)**

Si necesita asistencia lingüística para traducir esta carta, servicios de interpretación durante llamadas telefónicas o asistencia con cualquier otro asunto relacionado con su reclamo, llámenos. **(Spanish)**

Kung kailangan mo ng tulong sa wika sa pagsasalin sa liham na ito, pasalitang pagsasalin sa wika sa panahon ng mga tawag sa telepono, o tulong sa wika sa anumang ibang mga usapin sa iyong paghahabol, pakitawagan ang. **(Tagalog)**



**EXHIBIT "C"**

March 3, 2022

Reliance Standard Life Insurance Company        Lorrie Dobson
Quality Review Unit                              Reliance Standard Life Ins. Co.
P.O. Box 8330                                    2001 Market Street, Suite 1500
Philadelphia, PA 19101-8330                      Philadelphia, PA 19103

Re:    Claimant:    Krista Rosenberg
       Policy No:    LTD 124706
       Claim No:    2021-04-29-0227-LTD-01
       Policyholder:  Retina Vitreous Consultants, LLP dba Retina
                      Group of Florida

Dear Ms. Dobson,

I have reviewed Reliance Standard's repeated denials of Dr. Rosenberg's disability claim.

The instant policy, was sold to Dr. Rosenberg and her co-owners of Retina Vitreous Consultants, LLP d/b/a Retina Group of Florida back in 2013, by a licensed and appointed Reliance Standard Agent, Baruch Levi: https://licenseesearch.fldfs.com/Licensee/185483

Indeed, in 2013, through the present time, the Retina Group partners, including Dr. Rosenberg, each had established Subchapter S corporations and their income from the Retina Group simply passed through to them from the Retina Group.

Mr. Levi (and therefore Reliance Standard) knew this when the instant policy was bound and issued in 2013.

This policy is governed by Florida Law.

It is long-standing Florida Law that knowledge of the insurance agent is always imputed to the insurer which he represents.   *Almerico v. RLI Ins. Co.*, 716 So.2d 774, 776 (Fla. 1998); *Desantolo v. John Alden Life Insurance Co.*, 744 So.2d 1123 (Fla. 4th DCA 1999); *Straw v. Associated*, 728 So.2d 354 (Fla. 5th DCA 1999); *Gaskin v. General Insurance Company of Florida*, 397 So.2d 729 (Fla. 1st DCA 1981).  See also:  *Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1046 (Fla. 2008)

While I am not sure what transpired between Mr. Levi and Reliance Standard when the instant policy was initially bound back in 2013, I do understand that since Reliance Standard has denied Dr. Rosenberg's claim, that the local Reliance Standard agents and Reliance Standard have agreed to amend the instant policy to clarify that Dr. Rosenberg and the other Retina

*+Jeffrey M. Liggio
L. Jason Cornell

*National Board Certified
Civil Trial Advocate
+Florida Board Certified
Civil Trial Lawyer

Paralegal:
◊ Kathy G. Harmon

◊ Florida Registered Paralegal

Barristers Building
Suite 3-B
1615 Forum Place
West Palm Beach
Florida 33401

Phone:  561-616-3333

Fax:  561-616-3266

E-mail: info@liggiolaw.com

www.liggiocornell.com

Group principals' Subchapter-S Corporations were and are indeed covered individuals.

Even without an amendment to the instant policy, Reliance Standard's interpretation of the policy language to deny benefits to Dr. Rosenberg because her income from Retina Associates passes through her subchapter – S corporation and is not a W-2 wage, is also contrary to Florida Law.

Here is the "Covered Monthly Earnings" definition within the instant policy:

> "Covered Monthly Earnings" means your basic monthly salary received from the Policyholder on the day just before the date of Total Disability, prior to any deductions to a 401(k) and Section 125 plan. Covered Monthly Earnings does not include commissions, overtime pay, incentive pay or any other special compensation not received as Covered Monthly Earnings. However, "Covered Monthly Earnings" will include bonuses received from the Policyholder averaged over the lesser of:
>
> (1) the number of months worked; or
>
> (2) the 36 months;
>
> just prior to the date Total Disability began.
>
> And
>
> "Covered Monthly Earnings' means your compensation from the partnership averaged over the lesser of:
>
> (1) the number of months worked; or
>
> (2) the 36 months;
>
> in the calendar year(s) prior to the date Total Disability began, as reported on the partnership federal income tax return (K1) as "net earnings (loss) from self-employment".

 Even though that definition includes the phrase "basic monthly salary" there is no verbiage within the policy that excludes pass-through income to a Subchapter – S corporation, and no verbiage that limits "basic monthly salary" to W-2 wages.

There are very strict rules of insurance policy interpretation in Florida that Reliance Standard's denial of benefits to Dr. Rosenberg simply ignore.  Rather than recount them in this letter, I direct your attention to several Florida cases:  *Travelers Indemnity Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004); *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013); *Robles v. United Auto. Ins. Co.*, 2021 WL 1743606 (Fla. 1st DCA 2021).

Finally, a cursory bit of legal research reveals that a Federal Court in an ERISA matter in California, (the instant policy is not governed by ERISA) more than a decade ago, rejected

Reliance Standard's improper interpretation of "Covered Monthly Earnings" as it has towards Dr. Rosenberg.

I've enclosed a copy of that opinion, *Joas, MD. V. Reliance Standard Life Insurance Company*, 621 F.Supp.2d 1001 (S.D. Cal 2007) for your consideration.

Dr. Rosenberg has fully complied with each and every obligation she has, under the instant policy, and had complied with every request by Reliance in regard to her claim.

I strongly urge you to reconsider your position forthwith, and:

1) Approve Dr. Rosenberg's claim;
2) Pay Dr. Rosenberg all unpaid back benefits with interest, and;
3) Place her on claim going forward.

I can't imagine that it will take more than 30 days to reconsider, pay the back benefits with interest, and place Dr. Rosenberg on claim going forward.  Therefore, I'll expect to hear from you no later than 30 days after your receipt of this letter.

Sincerely,

Jeffrey M. Liggio, Esq.

621 F.Supp.2d 1001 (2007)

**Thomas A. JOAS, M.D., Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

Case No. 03CV850 WQH (AJB).

**United States District Court, S.D. California.**

December 11, 2007.

1002   *1002 David Blair Sharp, Law Offices of David B. Sharp, San Diego, CA, for Plaintiff.

Kevin P. McNamara, Harrington, Foxx, Dubrow and Canter, Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HAYES, District Judge.

Pending before the Court are cross-motions for summary judgment following remand from the Court of Appeal for the Ninth Circuit. (Docs. # 57, 59). On September 24, 2007, the Court heard oral argument on these matters. (Doc. # 67).

## PROCEDURAL BACKGROUND

On or about April 4, 2003, Plaintiff Thomas A. Joas, M.D. filed the Complaint in this matter against Defendant Reliance Standard Life Insurance Company in the California State Superior Court in San Diego. (Doc. # 1). Plaintiff alleged that Defendant improperly calculated Plaintiff's disability benefits in violation of various state laws. (Doc. # 1). On May 19, 2003, Defendant Reliance Standard Life Insurance Company removed the case to this Court on the grounds that the dispute was governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq., and presented a federal question. (Doc. # 1). Plaintiff did not challenge the removal.

On March 25, 2004, the parties filed cross-motions for summary judgment. (Docs. # 16-17, 22-23). Thereafter, on April 29, 2004, the Court granted Defendant's motion for summary judgment and denied Plaintiff's motion for summary judgment. (Doc. # 34). On May 21, 2004, Plaintiff filed a notice of appeal. (Doc. # 36).

On January 3, 2007, the Court of Appeal for the Ninth Circuit vacated this Court's Order of April 29, 2004, and remanded the case back to this Court for reconsideration in light of _Abatie v. Alta Health & Life Insurance Co._, 458 F.3d 955 (9th Cir.2006) (en banc), an intervening Circuit decision which altered the standard of review for a district court in ERISA cases. (Doc. # 69). On July 25, 2007, the parties filed the pending cross-motions for summary judgment. (Docs. # 57, 59).

1003   *1003 **FACTS**

Plaintiff is a medical doctor licensed to practice medicine in the State of California, with a specialty in anesthesiology. _Declaration of Thomas A. Joas (Joas Decl.) (Doc. # 61),_ ¶ 2. On July 1, 1971, Plaintiff became a shareholder and employee of Anesthesia Service Medical Group, Inc. (ASMG), a California corporation. _Joas Decl.,_ ¶ 3. As an employee of ASMG, Plaintiff received monthly compensation which fluctuated depending on (1) "the amount billed and collected by ASMG for the professional service that [Plaintiff] rendered on ASMG's behalf," and (2) the administrative fee charged by ASMG. _Joas Decl.,_ ¶¶ 4, 6. Between November, 1999, and November, 2001, Plaintiff received the following monthly compensation:

Month       Amount

EXHIBIT "C"

| | |
|---|---|
| 11/99 | $15,126.17 |
| 12/99 | $17,116.13 |
| 1/00 | $21,714.77 |
| 2/00 | $12,203.08 |
| 3/00 | $ 9,640.12 |
| 4/00 | $21,917.05 |
| 5/00 | $14,039.76 |
| 6/00 | $ 8,851.30 |
| 7/00 | $20,037.03 |
| 8/00 | $21,575.97 |
| 9/00 | $22,799.05 |
| 10/00 | $ 8,617.60 |
| 11/00 | $15,109.80 |
| 12/00 | $20,204.94 |
| 1/01 | $ 8,063.91 |
| 2/01 | $ 4,915.79 |
| 3/01 | $12,950.39 |
| 4/01 | $12,749.14 |
| 5/01 | $ 7,266.23 |
| 6/01 | $12,635.32 |
| 7/01 | $11,009.22 |
| 8/01 | $18,715.38 |
| 9/01 | $19,492.20 |
| 10/01 | $10,509.75 |
| 11/01 | $ 8,578.41 |

*Joas Decl.,* ¶¶ 6, 10

ASMG contracted with Defendant Reliance Standard Insurance Company to provide disability insurance benefits to ASMG shareholders and employees. *Joas Decl.,* ¶ 8; *Declaration of Glen Buberl (Buberl Decl.) (Doc. # 19),* ¶¶ 8-11. ASMG employees were required to participate in "the group longterm disability insurance program," and ASMG paid Defendant premiums for long term disability insurance for the years 2000 and 2001. *Buberl Decl.,* ¶ 10. Each ASMG employee and shareholder is an anesthesiologist. *Buberl Decl.,* ¶ 5.

The insurance policy entered into between ASMG and Defendant provided monthly disability benefits to ASMG employees if, among other things, one of the employees "is Totally Disabled as a result of a Sickness or Injury covered by this Policy." *Declaration of David B. Sharp (Sharp Decl.) (Doc. # 63),* Ex. 1 at 18. To determine the amount of monthly benefits a totally disabled person would be entitled to under the policy, the policy provided in relevant part:

> BENEFIT AMOUNT: To figure the benefit amount payable:
>
> (1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
>
> (2) take the lesser of the amount:
>
> (a) of step (1) above; or
>
> (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
>
> (3) subtract Other Income Benefits, as shown below, from step (2) above.

*Sharp Decl.,* Ex. 1 at 18. The policy defined "Covered Monthly Earnings" as:

> "Covered Monthly Earnings" means the insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly

1004      Earnings. However, for a *1004 salesperson, "Covered Monthly Earnings" will include commissions received from you averaged over the lesser of:

     (1) the number of months worked; or

     (2) the 24 months just prior to the date Total Disability began.

     If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basis annual salary by 12.

*Sharp Decl.,* Ex. 1 at 8. It is undisputed that Defendant was responsible for paying benefits under the insurance policy. *Sharp Decl.,* Ex. 7 at 14. It is further undisputed that the policy granted Defendant "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." *Sharp Decl.,* Ex. 7 at 14.

On November 30, 2001, Plaintiff suffered a major stroke and became totally disabled. *Joas Decl.,* ¶ 5 & Ex. B. Plaintiff filed a claim under the disability insurance policy entered into between ASMG and Defendant, and on May 9, 2002, Defendant approved the claim. *Joas Decl.,* ¶¶ 8-9 & Ex. B. In its letter to Plaintiff approving Plaintiff's insurance claim, Defendant outlined its benefits determination, and noted "[y]our net monthly benefit is $1,523.72 payable in accordance with the terms of the group policy." *Joas Decl.,* Ex. B. In calculating Plaintiff's net monthly benefit, Defendant concluded that Plaintiff was a salaried employee, and thus Plaintiff's net monthly benefit was calculated as 60% of Plaintiff's salary the month before he was disabled, less retirement pension and California state disability payments. *Joas Decl.,* Ex. B. In calculating Plaintiff's benefits, Defendant used Plaintiff's November, 2001, compensation of $8,578.41, as follows:

```
Monthly Eligible Salary @
 60% [60% of $8,578.41]      $5,147.05
Less Retirement Pension      $1,500.00
Less CA State Disability     $2,123.33
                             _____
Monthly Benefit             $1,523.72
```

*See Joas Decl.,* Ex. B.

Plaintiff immediately disagreed with Defendant's benefits calculation. On May 21, 2002, Plaintiff wrote Defendant to outline Plaintiff's concerns and to indicate that Plaintiff did not accept Defendant's benefits determination. *Joas Decl.,* ¶ 10 & Ex. C. In the letter, Plaintiff noted that his compensation fluctuated month-to-month, and indicated that he should be classified as a salesperson as opposed to a salaried employee. *Joas Decl.,* Ex. C. As a "salesperson" under the policy, Plaintiff would have received 60% of his average monthly compensation over the previous twenty-four months, less retirement and California state disability deductions, which would have resulted in monthly benefit payments of approximately $5,058.17, or $3,534.45 more per/month than Defendant outlined in its letter of May 9, 2002. *Joas Decl.,* ¶ 14. Plaintiff's letter stated that, "I do not expect to be penalized by the fact that my stroke happened to occur at the end of a period for which I had taken a lot of time off to attend professional meetings." *Joas Decl.,* Ex. C.

Defendant did not immediately respond to Plaintiff's letter of May 21, 2002, and on June 17, 2002, Plaintiff sent a follow-up letter to Defendant. *Joas Decl.,* Ex. D. Plaintiff wrote that:

     I now find that it has been six and a half months since my stroke and I still do not have a final determination as to the payments to which I am entitled under my disability insurance. I wrote to you on May 21, 2002 and
1005      raised a fairly straightforward point about your interpretation of the meaning of the language *1005 in my disability policy and now, over three weeks later, I have received no response to my questions. Since the point that I raised is not complicated, it would seem to me that I should be able to obtain a prompt response without having to enlist the services of an attorney.

*Joas Decl.,* Ex. D. In a letter dated June 25, 2002, Defendant responded to Plaintiff's letters, and, after citing the language of the policy, concluded that,

**EXHIBIT "C"**

We do understand your earnings fluctuate from month to month based upon the work you perform and the fees collected; however, our position is an Anesthesiologist is not a "salesperson". We must administer your benefits according to the provisions of your group policy. It is not our intent to penalize you; we would have used the same pay period had your earnings been higher.

*Joas Decl.,* Ex. E.

After receiving Defendant's letter of June 25, 2002, Plaintiff retained attorney David B. Sharp to assist with recovering benefits from Defendant. *Joas Decl.,* ¶ 13. On September 12, 2002, Sharp wrote to Defendant seeking "copies of all documents and records which were relevant to determining [Dr. Joas's] benefit payment." *Declaration of David B. Sharp (Sharp Decl.) (Doc. # 63),* Ex. 4. Sharp also sought, "copies of internal rules, guidelines, protocol and other criteria relied upon in making Reliance's determination," as well as "examples of similarly situated persons where Reliance used the same benefit analysis as for Dr. Joas, and examples of similarly situated persons for which Reliance used a different method of determining benefits than you did for Dr. Joas." *Sharp Decl.,* Ex. 4.

Reliance did not immediately answer Sharp's letter of June 25, 2002, resulting in follow-up letters dated October 4, 2002, and October 22, 2002, in which Sharp once again requested copies of all relevant documentation. *Sharp Decl.,* Exs. 5-6. Thereafter, in a letter dated October 21, 2002, Defendant responded to Sharp's request, noting, "We apologize for our delay in responding .... As per your request, enclosed are copies of all relevant documents and records pertaining to Dr. Joas' benefit payment." *Sharp Decl.,* Ex. 7. Defendant's letter of October 21, 2002, did not address Sharp's request for examples of similarly situated persons, and did not include "work papers or documents generated or created by ... any [claim] examiner," or Defendant's "file." *Sharp Decl.,* Exs. 7-8. On October 25, 2002, and December 12, 2002, Sharp authored letters to Defendant again seeking the previously requested information and documentation. *Sharp Decl.,* Exs. 8, 11, 13. On November 12, 2002, Sharp filed an official request for review of Defendant's benefits decision. *Sharp Decl.,* Ex. 10.

Defendant did not address Sharp's requests for examples of similarly situated persons or "work papers" created by any examiner until December 26, 2002, and then simply noted that, "[p]lease be advised that we have given you all of the information you have requested.... Unfortunately, we cannot disclose to you data referencing other claimants." *Sharp Decl.,* Ex 12. Sharp's later requests for specific examples and other information went unanswered. *Sharp Decl.,* Exs. 13-15.

On July 25, 2007, and in connection with the cross-motions for summary judgment, Defendant filed the administrative record in this case. (Doc. # 58). The administrative record filed on July 25, 2007, included substantially more documents than were provided to Plaintiff and the Court in 2004 when the Court ruled on the parties' previous \*1006 motions for summary judgment. *See* (Doc. # 24); *Sharp Decl.,* Ex. 7.

1006

## STANDARDS OF REVIEW

## I. Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issues of material fact and entitlement to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also* <u>Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)</u>. A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)</u>. A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a motion for summary judgment, "[t]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." <u>Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.2001)</u>. The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## II. ERISA Benefits Decision

EXHIBIT "C"

The parties seek review of Defendant's decision to deny certain benefits to Plaintiff under the insurance policy. Under the facts of this case, it is undisputed that Defendant both funded the insurance policy and had discretion to interpret the policy's terms and decide eligibility for benefits. The parties agree that Defendant operated under a structural conflict of interest.

## A. The *Abatie* Standard Generally

Where an ERISA-covered plan confers discretionary authority to interpret the plan upon a plan administrator operating under a conflict of interest, a district court reviewing a benefits decision made pursuant to the plan applies the standard of review articulated in *Abatie v. Alta Health & Life Insurance*, 458 F.3d 955 (9th Cir.2006) (en banc). In *Abatie,* the Court of Appeal for the Ninth Circuit held that, where a plan confers discretion upon a conflicted plan administrator to interpret the plan, a district court reviews the decision of the conflicted plan administrator for an abuse of discretion, "tempered by skepticism commensurate with the plan administrator's conflict of interest." *Abatie*, 458 F.3d at 959. Specifically, the Court of Appeal for the Ninth Circuit held that:

> [a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. But in any given case, all the facts and circumstances must be considered .... A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it.

*Abatie*, 458 F.3d at 968. Though the Court of Appeal noted that the standard articulated in *Abatie* was "indefinite," the Court added that the district court's task was akin to assessing a witness's credibility in a bench trial—"[w]hat the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance *1007 company's or plan administrator's reason for denying coverage under a particular set of medical and other records." *Abatie*, 458 F.3d at 969. The Court added that,

1007

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, *Lang [v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.],* 125 F.3d [794] at 799 [ (9th Cir.1997) ]; fails adequately to investigate a claim or ask the plaintiff for necessary evidence, *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463-64 (9th Cir.1997); fails to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); or has repeatedly denied benefits to deserving participants by interpreting the plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie*, 458 F.3d at 968-69. In determining "the nature, extent, and effect on the decision-making process of any conflict of interest," the district court may consider evidence outside the administrative record. *Abatie*, 458 F.3d at 970.

## B. The Standard of Review Under the Facts of This Case

Defendant contends that the structural conflict of interest is a technical conflict which should not substantially alter the abuse of discretion standard of review. Defendant contends that the Court should employ an abuse of discretion standard of review tempered with only a low level of skepticism under the facts of this case. Plaintiff contends that the Court should review Defendant's benefits decision either de novo or for an abuse of discretion tempered with a substantial and high degree of skepticism. Plaintiff contends that the facts of this case warrant a high degree of skepticism toward Defendant's interpretation because Defendant (1) failed to comply with ERISA's administrative review requirements, (2) has interpreted similar policy language inconsistently in other cases, (3) failed to produce relevant information which Plaintiff requested in order to challenge Defendant's benefits determination, and (4) produced an administrative record in July, 2007, which included documents which had not been lodged with the Court or provided to Plaintiff prior to the originally filed cross-motions for summary judgment.

**EXHIBIT "C"**

Where an ERISA plan denies an insured benefits, ERISA requires the plan to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination ... under which there will be a *full and fair review* of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1) (emphasis added). The claims procedures will not be deemed to provide a claimant with a reasonable opportunity for a "full and fair review" of a claim and adverse benefit decision unless, among other things, the claims procedures,

> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;

1008    (iv) Provide for a review that takes into account all comments, documents, records, *1008 and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503-1(h)(2)(iii)-(iv). A document, record, or other information is "relevant" to a claimant's claim for benefits if such document, record, or other information,

> (i) Was relied upon in making the benefit determination, (ii) Was submitted, considered, or generated in the course of making the benefit determination ..., (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefits determination, or (iv) ... constitutes a statement of policy or guidance with respect to the plan ....

29 C.F.R. § 2560.503-1(m)(8). In order for the claims procedures to be reasonable, 29 C.F.R. § 2560.503-1(b)(5) requires that the claims procedures must, "contain administrative processes and safeguards designed to insure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."

It is undisputed in this case that Defendant did not provide Plaintiff with examples of how Defendant interpreted the terms of the policy with respect to similar situated persons seeking benefits, or examples of persons whom Defendant previously deemed to be either salespersons or salaried employees under the policy, even though that information was requested by Plaintiff on numerous occasions. *Sharp Decl.,* ¶¶ 4-6, 8, 11, 13. Defendant failed to address Plaintiff's request for examples several times, before informing Plaintiff that "[u]nfortunately, we cannot disclose to you data referencing other claimants." *Sharp Decl.,* Ex 12. Defendant did not offer or provide Plaintiff examples of similar situated persons which redacted potentially personal or confidential information, and there is no evidence before the Court which would permit an inference that Defendant sought to or considered its duty to interpret the policy consistently when it interpreted the policy with respect to Plaintiff's claim. *See* 29 C.F.R. §§ 2560.503-1(b)(5), (m)(8). The Court concludes that Defendant's failure to provide Plaintiff with requested information and to consider whether it was interpreting the insurance policy consistently during Plaintiff's benefits determination requires this Court to temper the abuse of discretion standard of review with a fair amount of skepticism. *See* Abatie, 458 F.3d at 972.

In addition to failing to follow ERISA review requirements in full, the Court notes that Defendant advocated a different interpretation of similar "covered monthly earnings" language in a case before the Court of Appeal for the Fifth Circuit, and the Court concludes that this fact also requires the Court to temper with skepticism the abuse of discretion standard under the facts of this case. In *Keszenheimer v. Reliance Standard Life Ins. Co.,* 402 F.3d 504 (5th Cir.2005), Defendant took the position that salary was fixed compensation paid regularly, as opposed to Defendant's position in this case that salary is a fixed method of calculating compensation. Defendant argued in *Keszenheimer* that an income which fluctuates month-to-month does not plainly fit the definition of monthly salary, which is contrary to the position Defendant advocates in this case. *Id.* at 507-09.

1009    After reviewing *Abatie* and the facts before the Court on summary judgment, *1009 the Court concludes that it must review Defendant's decision to deny Plaintiff benefits under the policy for an abuse of discretion tempered with an elevated degree of skepticism and scrutiny for the reasons stated above. *See, e.g., Archuleta v. Reliance Standard Life Ins. Co.,* 504 F.Supp.2d 876, 884-85 (C.D.Cal.2007). As established by other courts, "[a]n ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Wells v. Reliance Standard Life Ins. Co.,* CV 06-32-

M-DWM-JCL, 2007 WL 433280, *4, 2007 U.S. Dist. LEXIS 16885, *11 (D.Mont. Jan. 11, 2007) (citing *Boyd v. Bell/Rozell NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir.2005)).

## DISCUSSION

In authorizing disability benefits for Plaintiff under the policy, Defendant deemed Plaintiff a salaried employee, and calculated Plaintiff's monthly benefit using Plaintiff's November, 2001, compensation of $8,578.41. Defendant concluded that Plaintiff was not a "salesperson" as that term is used in the policy's definition of "covered monthly earnings" because Plaintiff's job description was unlike that of a salesperson, and in Defendant's opinion, "an Anesthesiologist [is] not a salesperson." *See Sharp Decl.,* Ex 14. Plaintiff immediately objected to Defendant's benefit calculation, and sought administrative review of the decision with the help of attorney Sharp. Thereafter, Defendant denied Plaintiff's administrative appeal on the grounds that Plaintiff could not be considered a salesperson under the policy. The question before the Court is whether Defendant abused its discretion by classifying Plaintiff as a salaried employee under the policy and denying additional benefits which Plaintiff requested.

## I. Standard for Reviewing ERISA Policy Language

In order to determine whether Defendant abused its discretion in classifying Plaintiff as a salaried employee and denying benefits, the Court must examine and interpret the "plain language" of the insurance policy using developed principles of federal common law. *See Canseco v. Construction Laborers Pension Trust for So. Calif.,* 93 F.3d 600, 606 (9th Cir.1996); *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1125 (9th Cir.2002). Under the federal common law of ERISA, a district court "interpret[s] terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Padfield,* 290 F.3d at 1125. It is established that "trustees abuse their discretion if they ... construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan." *Canseco,* 93 F.3d at 606; *see also Johnson v. The Trustees of the Western Conf. of Teamsters,* 879 F.2d 651, 654 (9th Cir.1989); *Neathery v. Chevron Texaco Corp. Group Accident Policy,* Case No. 05CV1883 JM (CAB), 2007 WL 2239195, *8, 2007 U.S. Dist. LEXIS 55351, *23 (S.D.Cal. July 31, 2007). Where an ERISA plan administrator is granted discretion to interpret insurance policy language and a Plaintiff challenges the administrator's interpretation, the question the Court must ask is not "whose interpretation of the plan documents is most persuasive, but whether the [plan administrator's] interpretation is unreasonable." *Canseco,* 93 F.3d at 606 (citation omitted).

## II. Whether Defendant Abused Its Discretion in Interpreting Policy Language

1010   On May 9, 2002, Defendant determined that Plaintiff was totally disabled. *1010 *Sharp Decl.,* Ex. 2. Pursuant to the insurance policy, Plaintiff was entitled to a monthly benefit equal to 60% of his "Covered Monthly Earnings," less other income benefits. *Sharp Decl.,* Ex. 1 at 6, 18. The policy defined "Covered Monthly Earnings" as:

> "Covered Monthly Earnings" means the insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings. However, for a salesperson, "Covered Monthly Earnings" will include commissions received from you averaged over the lesser of:
>
> (1) the number of months worked; or
>
> (2) the 24 months just prior to the date Total Disability began.
>
> If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basis annual salary by 12.

*Sharp Decl.,* Ex. 1 at 8.

EXHIBIT "C"

Defendant contends that Plaintiff's "Covered Monthly Earnings" were his "monthly salary" received on the day just before Plaintiff became totally disabled. Defendant contends that Plaintiff cannot be considered a salesperson because (1) Plaintiff did not sell anything while employed by ASMG, (2) Plaintiff received a monthly salary based on a fixed method of calculation, and (3) Plaintiff never received compensation which could be considered a commission. Plaintiff contends that he did not receive a monthly salary while working for ASMG and that he should have been classified as a salesperson under the plain language of the policy because his compensation severely fluctuated from month to month depending on how much he worked. Plaintiff asserts that his compensation regime was more closely akin to that of a commissioned salesperson than a salaried employee. Plaintiff contends that he is entitled to "Covered Monthly Earnings" equal to the average of all his commissions received over the "24 months just prior to the date Total Disability began." *Sharp Decl.,* Ex. 1 at 8.

The policy specifically provides four alternative definitions of "Covered Monthly Earnings." *Sharp Decl.,* Ex. 1 at 8. If an employee receives a "monthly salary," "Covered Monthly Earnings" means the monthly salary received on the day before total disability. *Sharp Decl.,* Ex. 1 at 8. If an employee is a salesperson, "Covered Monthly Earnings" means the employee's salary plus commissions earned over either the previous 24 months before disability or the total number of months worked. *Sharp Decl.,* Ex. 1 at 8. Finally, if an employee is paid hourly, "Covered Monthly Earnings" means the number of hours worked during an average week times 4.33, and if an employee is paid annually, "Covered Monthly Earnings" means the base annual salary divided by twelve. *Sharp Decl.,* Ex. 1 at 8. Here, the parties agree that Plaintiff was neither paid annually nor hourly, and thus the question before the Court is whether Defendant's decision to classify Plaintiff as a salaried employee as opposed to a salesperson was an unreasonable interpretation of the policy.

In including four alternative definitions for "Covered Monthly Earnings," the policy as a whole intended to ensure that disability benefits for individual employees fairly stemmed from their average compensation for any given month or week. 1011 *1011 Where an employee was paid a fixed monthly salary, that salary was used as "Covered Monthly Earnings." However, where an employee did not receive a fixed monthly salary, and instead was paid according to sales made or hours worked, the policy clearly provided that the employee should receive a monthly benefit which took into account and factored in fluctuations in earnings from month-to-month and week-to-week. The policy ensured that a disabled hourly employee would not be without benefits because he was on vacation the week preceding his disability, and a salesperson paid in part based on sales would not be penalized simply because he made no sales the month before becoming totally disabled. Similarly, the policy provided that an employee paid once a year would receive benefits equal to 1/12 of his yearly salary, thus ensuring that the annually paid employee would receive a monthly benefit commensurate to his work and the benefits received by other similarly disabled employees who had been paid at regular intervals. The Court finds that, when interpreted in "an ordinary and popular sense as would a person of average intelligence and experience," the varied definitions of "Covered Monthly Earnings" protected disabled employees benefits by ensuring that those with fluctuating monthly or weekly compensation which have their benefits calculated by looking at greater periods of time than simply the day, week, or month before total disability. *See Padfield,* 290 F.3d at 1125.

"Salary" is commonly defined as a "fixed compensation for services, paid on a regular basis." *Order of April 29, 2004* at 10 (citing Webster's II New College Dictionary 226 (3d ed. 2001)); *see also Keszenheimer v. Reliance Standard Life Ins. Co.,* 402 F.3d 504, 508 (5th Cir.2005) ("Salary is fixed compensation paid regularly (as by the year, quarter, month, or week) for services."). In this case, Plaintiff's monthly compensation was not fixed, and, in fact, fluctuated significantly depending on a number of factors, some of which were out of Plaintiff's control. *Joas Decl.,* ¶¶ 4, 6. Accordingly, the Court concludes that it is not reasonable to find that Plaintiff received a "monthly salary" as that term is used in the policy. This conclusion comports with that of the Court of Appeal for the Fifth Circuit's conclusion in *Keszenheimer v. Reliance Standard Life Ins. Co.,* where the Court held that,

> Compensation paid ad hoc for working discrete blocks of time—such as an hourly wage—is not typically considered salary. Not unlike an hourly wage earner, Keszenheimer's per diem and auto allowance compensation were not fixed, but were paid only for the days that he worked offshore. Given the fluctuation in income day-to-day and month-to-month, this does not fit the plain meaning of `monthly salary' as contemplated in the policy and as commonly understood.

*Keszenheimer,* 402 F.3d at 508. Indeed, Plaintiff's compensation, paid on a fluctuating basis and based on his work for "discrete blocks of time," is not fixed, and does not fit within the plain meaning of "monthly salary" as used in the insurance policy. *See Sharp Decl.,* Ex. 1 at 8.

**EXHIBIT "C"**

Defendant contends that Plaintiff received a monthly salary because the method of calculating Plaintiff's compensation was fixed. However, as noted by this Court previously, salary is generally defined as "fixed compensation," which is not the same as "a fixed method of compensation." *Order of April 29, 2004* at 10. Furthermore, as noted in *Keszenheimer,* one of the key characteristics of salary is that it does not fluctuate. <u>*Keszenheimer,* 402 F.3d at 508.</u> Under the facts of this case, it is clear that Plaintiff's monthly compensation *1012 fluctuated significantly—Plaintiff earned $22,799.05 in September of 2000, and only $4,915.79 in February of 2001.

1012

After interpreting the pertinent policy language in this case, the Court concludes that Plaintiff did not receive a "monthly salary," as that term is used in the policy. Rather, after reviewing the method in which ASMG compensated Plaintiff, the Court concludes that Plaintiff's monthly compensation regime is akin to commissions earned by salespersons. Plaintiff in effect sold his services to ASMG, allowing ASMG to bill and collect from patients and pay Plaintiff a percentage. *Joas Decl.,* ¶¶ 4-6. Plaintiff only received compensation when he sold and performed medical services. If Plaintiff did not work, Plaintiff was not paid.

Under the policy at issue in this case, a salesperson's covered monthly earnings include "commissions." *Sharp Decl.,* Ex. 1 at 8. "Commission" is commonly defined as "a fee or percentage paid to a salesperson or agent for his or her services." *Order of April 29, 2004 (Doc. # 34)* at 9-10; *see also* <u>*Keszenheimer,* 402 F.3d at 510.</u> Here, not only did Plaintiff in effect sell his services to ASMG, ASMG paid Plaintiff according to a formula "dependent upon the amount billed and collected by ASMG for services which Plaintiff rendered on ASMG's behalf." *Joas Decl.,* ¶ 4. Furthermore, before paying Plaintiff, ASMG deducted an administrative fee based upon a "percentage of the amount that ASMG billed and collected," which percentage varied over the years and effected Plaintiff's compensation. *Joas Decl.,* ¶ 4.

After reviewing and interpreting the policy language as a whole in "an ordinary and popular sense as would a person of average intelligence and experience" *see* <u>*Padfield,* 290 F.3d at 1125,</u> the Court concludes that under the facts of this case, Defendant's decision to classify Plaintiff as a salaried employee "construe[d] provisions of the plan in [a] way that conflict[ed] with the plain language of the plan," and was unreasonable and an abuse of discretion. *Wells,* CV 06-32-M-DWM-JCL, 2007 WL 433230, *4, 2007 U.S. Dist. LEXIS 16885, *11 (D.Mont. Jan. 11, 2007) (citing <u>*Boyd v. Bell/Rozell NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir.2005)</u>); *see also* <u>*Canseco,* 93 F.3d at 606;</u> <u>*Johnson v. The Trustees of the Western Conf. of Teamsters,* 879 F.2d 651, 654 (9th Cir.1989)</u>); *Neathery v. Chevron Texaco Corp. Group Accident Policy,* Case No. 05CV1883 JM (CAB), 2007 WL 2239195, *8, 2007 U.S. Dist. LEXIS 55351, *23 (S.D.Cal. July 31, 2007).

## CONCLUSION

Under the facts of this case Plaintiff's "Covered Monthly Earnings" were equal to Plaintiff's average compensation received during the "24 months just prior to the date Total Disability began." *Sharp Decl.,* Ex. 1 at 8. After reviewing the declarations and evidence submitted, Plaintiff's average compensation for the 24 months just prior to the date of total disability was $14,469.17. *See Joas Decl.,* ¶ 6. Thus, Plaintiff's monthly benefit should have been calculated as follows:

```
Monthly Eligible Salary @
 60% [60% of $14,469.17]    $8,681.50
Less Retirement Pension      $1,500.00
Less CA State Disability     $2,123.33
                            _____
Monthly Benefit             $5,058.17
```

*See, e.g., Joas Decl.,* Ex. B. Defendant calculated Plaintiff's monthly benefit using Plaintiff's November, 2001, compensation of $8,578.41, and thus concluded that Plaintiff was entitled to $1,523.72 per/month. The Court concludes that Defendant abused its discretion in calculating Plaintiff's monthly benefit.

It is hereby ORDERED that:

1013          *1013 (1) Plaintiff's motion for summary judgment (Doc. # 59) is GRANTED.

          (2) Defendant's motion for summary judgment (Doc. # 57) is DENIED.

EXHIBIT "C"

Plaintiff shall submit a proposed judgment to the Court within 15 days of this Order. Defendant may file objections to the proposed judgment within 15 days of receipt of Plaintiff's proposed judgment.

IT IS SO ORDERED.

Save trees - read court opinions online on Google Scholar.